Dated 0. Boehm, J.
The Appellate Division, Fourth Department (33 A D 2d 641), remitted to this court for determination, the question of whether, upon the testimony at the preliminary hearing, the defendant knowingly, willingly, voluntarily and intelligently waived his right to counsel at an identification lineup.
Testimony at the pretrial identification hearing was given on January 6, 1969 by the victim, and Detective William Mahoney of the Rochester Police Bureau, and the defendant. At a Huntley hearing earlier the same day, proof was taken with respect to the admissibility of the defendant’s confession regarding the same charges, and findings were made that the defendant knowingly, willingly, voluntarily and intelligently waived his right to counsel and his right to remain silent at the time he made- an inculpatory oral statement to the police on September 5, 1968 *172 at the Public Safety Building. After his oral statement, defendant was asked to sign a typewritten statement and then to again repeat his confession so that it could be transcribed by the police stenographer.
The admissibility of all three statements, the first one which was oral, the second one typed by a police officer and signed by defendant, and the third taken down in shorthand by the police stenographer and transcribed by him, were all in issue at the Huntley hearing. Because the transcript of the statement before the police stenographer indicated that the defendant twice requested a lawyer before finally making it, it was suppressed, as was the typed statement signed by the defendant, and the People were limited to the first oral statement at the time of trial.
Later the same morning, (Sept. 5, 1968), immediately after the defendant confessed, he was brought to a lineup room on the fourth floor of the Public Safety Building. At the lineup with the defendant, a Negro male, were four other men of approximately the same height and weight as the defendant, one or two of them wearing similar clothing, all of them male and all of them Negroes. The defendant stood at one end of the lineup.
Detective Mahoney testified that before the defendant was brought into the lineup, he advised defendant that he had a right to a lawyer, that he had a right to have a lawyer present at the time of the lineup and, further, he could refuse to go into the lineup if he wanted to. According to Detective Mahoney, the defendant said he was willing to go into the lineup because he wanted to co-operate and was sorry for what he had done to the complaining witness and two other women.
The lineup room is adjacent to another room separated by a wall or door with a one-way mirror so that a person sitting in the viewing room can view the people in the lineup. After the defendant entered the lineup room and while standing in the lineup with the others, the victim, who was in the Public Safety Building, went into the viewing room and was told by Detective Mahoney to look through the one-way mirror, observe the men carefully and see if she could identify any of them as the man who had attacked her. After looking at the men in the lineup for about 45 seconds to one minute, she identified the defendant.
The defendant denied being advised at any time that he was entitled to a lawyer at the lineup.
The court finds that the defendant was informed of his right to counsel before the lineup identification and of his right to have counsel present and that the defendant knowingly, will *173 ingly, voluntarily and intelligently waived his right to counsel.
It is not entirely clear from the testimony of Detective Mahoney whether defendant was again specifically informed, as he had been three times earlier that morning when he was interrogated, that if he did not have a lawyer or could not afford a lawyer, one would be furnished for him. Although this would be an essential part of the information required to be given before a suspect in custody would be able to knowingly, willingly, voluntarily and intelligently waive his right to counsel, the court finds that if there was a failure to again advise defendant thereof, such would not fatally flaw the lineup identification. This finding is not intended to state a general principle of law, but is limited to the facts herein, specifically because the defendant had been given all of the required Miranda warnings on three separate occasions only about an hour before the identification lineup. (Cf. People v. Baker, 23 N Y 2d 307; see, also, People v. McKie, 25 N Y 2d 19; People v. Kaye, 25 N Y 2d 139; People v. Swift, 32 A D 2d 183; People v. Post, 23 N Y 2d 157.)
Although defendant had previously requested counsel when his confession was taken by the police reporter, the court makes the further finding that such request does not bar evidence as to the victim’s pretrial lineup identification of him. Defendant was readvised of his right to counsel prior to the lineup, which was a proceeding subsequent to, separate from, and in a different setting than his interrogation for the purpose of obtaining a confession. In any event, such request would not, in and of itself and absent a showing of a due process violation, taint a subsequent voluntary statement (People v. McIntyre, 31 A D 2d 964; cf. People v. Stephen J. B., 23 N Y 2d 611). Logically, this should be extended to a subsequent voluntary lineup appearance.
There were no specific findings made as to whether there was a knowing, willing, voluntary and intelligent waiver by defendant of his lineup right to counsel at the time of the original Wade hearing because of the question in the court’s mind at that time of its necessity. This was a pre-indictment lineup and before the appointment of counsel. Both United States v. Wade (388 U. S. 218) and Gilbert v. California (388 U. S. 263), involved post-indictment identifications. In both cases Justice Bbexxae", writing for the majority, particularly called attention to the fact that the prior extrajudicial identifications were made at post-indictment lineups and that a post-indictment lineup was “ a critical stage ” of the prosecution.
Recently, by an equally divided court, the United States Supreme Court, in Biggers v. Tennessee (390 U. S. 404), affirmed *174 petitioner’s conviction for rape over the strong dissent of Justice Douglas on due process grounds, and thereby implicitly upheld a pre-indictment identification.
Although stated in the context of an immediate ‘1 confrontation ’ ’ identification, rather than one involving a later lineup, and for an unrelated crime, the Second Circuit, per Judge Friendly, held that police custody was not a situation which ‘ ‘ automatically triggers the 'Sixth Amendment right to counsel, as it would Fifth Amendment privilege against self-incrimination.” (United States v. Davis, 399 F. 2d 948, 951 [C. A. 2d, July 17, 1968].)
However, the Fourth Department’s decision has laid to rest any question that may have existed as to whether or not the custodial Wade-Gilbert right to counsel includes pre-indictment as well as post-indictment identification proceedings. The answer is that it does.
The court concludes, therefore, that the defendant was required to be advised of his right to be represented by counsel at the lineup, that he was advised thereof, and that he knowingly, willingly, voluntarily and intelligently waived the same.